Graves *v.* Fisher & al.

---

GRAVES *vs.* FISHER & AL.

If a lot be granted fronting on, and bounded by a river, the side lines are to be continued to the main stream, though they thereby cross a point formed by the junction of one of its branches with the principal river.

It is no valid objection to a report of referees, that one of them had formed a previous opinion upon the case submitted to them, if his mind appears to have been still open to conviction, and no imputation of unfairness rests upon him.

THIS was an action of trespass *quare clausum* for entry upon the plaintiff's flats, being the point of land made by the junction of *Mo-*

Graves *v.* Fisher & al.

*lasses* creek with *Cathance* river, and which he claimed as part of a lot called "letter A." It was originally commenced in the Court of Common Pleas, where it was referred to arbitrators, by a rule of court. Upon the coming in of their report, which was in favor of the plaintiff, it was contested by the defendant, and, on his motion, recommitted for further proof. After a second hearing, a report was again returned for the plaintiff, and again contested by the defendant.

It appeared from examination of the referees, that the principal controversy was whether the *locus in quo* was part of the lot called A., belonging to the plaintiff, or of B., belonging to the defendant. These lots in point of fact, upon actual survey, were situated as thus described by the continued lines :

The titles of the respective parties were derived, thorugh mesne conveyances, from *James Bowdoin,* Esq, who conveyed both the lots, by a deed dated *Sept.* 25, 1780, to *Abraham Preble,* under whom the defendants claimed, and to *Abraham Preble,* Jr. under whom the plaintiff claimed, by the following description :—" Two parcels of land in *Bowdoinham* aforesaid, fronting on *Cathance* river, and bounded easterly thereon, seventy-five rods on each side of a three rod road, running W. N. W. as originally laid out from said river ; the southernmost of said lots being marked A. and the northernmost

marked B. ; each containing one hundred and fifty acres, more or less ; said lot A. being bounded southerly on said *Bowdoin's* land, westerly on a lot marked C., northerly on said intended road, and easterly on said river, seventy-five rods ;—and the said lot marked B., bounded southerly on said road, westerly seventy-five rods on lot D., granted by me to *Abia Cobb*, northerly on said *Bowdoin's* land, and easterly seventy-five rods on said river ; the said intended road from said river running W. N. W. between said lots, as far as said lot D.—To have and to hold the said lot B. to the said *Abraham Preble* Esq. and his heirs, and the said lot A. to the said *Abraham Preble, Jun.* and his heirs;" &c.

It appeared further, before the referees, that a plan of these lots, with others, was made by *John Merrill,* in 1772 ; the part representing these lots purporting to be copied from *McKecknie's* plan; by which the lots were represented as lying farther down the river, and the road between the two lots as touching the river below the *locus in quo,* as appears by the dotted lines on the diagram above.

The plaintiff hereupon contended that the lot A. extended across the creek, to *Cathance* river, on which it was bounded by the deed ; and further proved that in low tides the water wholly flowed out of the creek, at low water, in the part contiguous to his lot. But the defendants insisted that no more land would pass by the grant of lot A. than was delineated on the plan ; by which the flats in question were evidently a part of lot B. But the referees, intending, as they said, to decide according to law, as well as equity, were of opinion that as the side lines of the lots and of the road, as far as the creek, were undisputed and unquestionable, the division line must be taken to extend, by the same course, to the river; the creek not being mentioned as a boundary in the deed ; and thereupon decided for the plaintiff.

The defendant, as a further ground of contesting the report, proved that one of the referees, on the day of the final hearing before them, and previous to its commencement, being asked if he had formed an opinion upon the merits of the case, admitted that before he ever acted as a referee upon this question, having seen the deed from Mr. *Bowdoin,* and being acquainted with the situation of the

land, he was well persuaded that the parcel in controversy be-
longed to the plaintiff; but observed that his mind was open to con-
viction, that he entertained no prejudice against the defendants or
their cause; and was prepared to give proper weight to the evidence
to be produced.   The defendants thereupon objected to his acting
as a referee; but he did not withdraw, deeming it his duty to sit
with the others.

It further appeared that the lot B. was conveyed to the defend-
ants' father, by *Abraham Preble,* by deed dated *Nov.* 4, and recorded
*Dec.* 6, 1792;—bounding the lot on three sides, by the monuments
before stated;—" thence S. S. E. to *Cathance* river, and thence
up said river, to the first mentioned bounds, as is delineated on Esq.
*Bowdoin's* plan."   The deed to the plaintiff was from *Abraham
Preble Jun.* and was made *Dec.* 11, 1823.

Upon proof these facts, before *Smith J.* in the Court below, the
defendants opposed the acceptance of the report; but he overruled
the objection; and they brought the cause into this Court, by sum-
mary exceptions, filed pursuant to the statute.

*Allen,* in support of the exceptions, argued that from the language
of Mr. *Bowdoin's* deed, and the designation of the lots by letter, it
was evident that the grant was made with reference to a plan; and
this was no other than *Merrill's* or *McKecknie's.*   This is confirmed
by the declaration of *Preble,* in his deed to the defendant's father, in
1792.   If such was the fact, the deed must be so construed, in
connection with the plan, as to make the *locus in quo* a part of lot B.

But if not, yet this action cannot be maintained; the plaintiff's
grantor having been disseised at the time of his grant in 1823, by the
prior deed of 1792, to the defendant's father, of the lot B., including
the land in dispute; and so nothing passed by the deed to the plaintiff.

To the point that the referee was disqualified, having formed an
opinion on the question, before he heard the cause, he cited 1. *Johns.*
316.   17. *Johns.* 410.   *Walker v. Frobisher.* 6. *Ves.* 70.

*Orr,* on the other side, was stopped by the Court; whose opinion
was afterwards delivered by

WESTON J.   There being no question about the side lines of the
lots A. or B. the flats in controversy belong to the plaintiff, as the

Graves *v.* Fisher & al.

owner of A. if that lot extends to the river. The title of both the parties to their respective lots, is derived from a conveyance by *James Bowdoin* of lot A., to *Abraham Preble. Jun.*, and of lot B. to *Abraham Preble.* By that conveyance, lot A. is bounded easterly on *Cathance* river. Lot A. then very clearly embraced these flats. It is contended, however, that this plain and necessary result is to be controlled and modified by a certain plan, made by *John Merrill*, in 1772, upon which these lots were delineated. No plan is referred to, or mentioned in *Bowdoin's* deed; but it is urged, that the designation of the lots by letters implies and supposes a plan. This does not necessarily follow. A survey might be made, and the lots now owned by the parties, and the rear lots upon which they were bounded, might receive the names of A. B. C. and D. without making a plan. And if a plan was made, and A. did not, as laid down upon it, go to the river; if the owner did not refer to the plan, and thought proper distinctly and expressly to extend it to the river, in his conveyance, he had a perfect right so to do; and the grantee would hold accordingly. But if the plan exhibited to the referees, and now produced to the court, had been referred to, the limits of A. would not thereby be curtailed. By that plan, the whole easterly line of A. is bounded on *Cathance* river. It is true, Molasses creek is there represented as entering upon the south side of B., and extending northerly thereon; whereas, in fact, it enters upon A. But this mistake in the location of the creek, does not change the rights of the parties. The creek is not given as a boundary in the deed; but each lot is expressly bounded on the river; both in the deed and on the plan. When the survey was made, the waters of the river might have been so high, that the mouth of the creek might appear to the eye to be on B., and this may account for its having been thus delineated; but, however occasioned, this error in a part of the plan, altogether immaterial in fixing the location of the lots, can have no legal influence in the decision of the cause.

As to the objection to one of the referees, it appeared that prior to the hearing, being acquainted with the premises, he had a strong impression in regard to the merits of the case in controversy; but he insisted that his mind was open to conviction; that he had no

prejudice against the defendants, and that he was prepared to give due weight to whatever might be offered or urged in their favor. Referees are chosen and selected by the parties; and not unfrequently from the knowledge they are supposed to possess of the facts and principles, which should influence their decision. If, at the time of their award, they should avow that the opinion they then gave was one which they had entertained prior to the hearing, and that nothing had appeared to change it, although their minds were open to conviction, and no imputation of unfairness could otherwise rest upon them, the court might, in the exercise of their discretion, accept their report. In this case, it is apparent, from facts which are undisputed, that the decision of the referees was in accordance with law, and that they could not, without violating law, have decided otherwise.

The exceptions are overruled; and the judgment of the court below affirmed.